## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                          No. 03-CR-1890 JB

CARMEN PALMA,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Carmen Palma's Motion for Downward Departure and Sentencing Memorandum, filed January 5, 2005 (Doc. 263). The Court held an evidentiary hearing on this matter at Defendant Carmen Palma's ("Palma") sentencing on January 31, 2005. The primary issue is whether the Court should depart downward ten levels in light of Palma's (i) cultural history; (ii) duress and coercion exasperated by her vulnerability and the parental influence of her uncle, Jose del Carmen Palma-Amaya ("Palma-Amaya"); (iii) aberrant behavior in committing this offense; and (iv) frailty. Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, the Court will deny Palma's motion for downward departure.

### FACTUAL BACKGROUND

Palma was born in the United States. According to the Presentence Investigation Report ("PSR"), which the Court adopted as its factual findings,[1] she went to school in Mexico for twelve

---

[1] The parties did not object to the PSR. <u>See</u> Transcript of Hearing at 3:13-15.

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

years and then lived in the United States for some time in 1994.  See PSR ¶¶ 106, at 31-32.  She then returned to Mexico, but re-entered the United States in 1999 at the age of 20.  See id.

The criminal activity for which Palma was indicted began in 2002.  See id.  The United States contends that, by this time, Palma was driving in Albuquerque, knew her way around the city well, and was familiar with United States culture.  See United States' Response to Defendant's Motion for Downward Departure at 9, filed January 7, 2005 (Doc. 265)(hereinafter, "Response").  The evidence compiled during months of investigation by the Drug Enforcement Administration ("DEA") shows Palma involved in the role of a drug and money courier for Palma-Amaya's drug business.  See PSR ¶ 8, at 8.  The Title III wire interception began on August 26, 2002, and ceased on October 7, 2002.  During this time-frame, the DEA intercepted Palma's calls on numerous occasions.  See Albuquerque DEA Wire Interception, 20:54:14 - 20:55:03 (dated August 27, 2002); id. at 20:55:44 - 20:56:37 (dated August 27, 2002); id. at 12:02:21 - 12:02:51 (dated August 28, 2002); id. at 18:34:03 - 18:34:33 (dated September 8, 2002); id. at 19:18:49 - 19:19:23 (dated September 8, 2002); id. at 19:48:12 - 19:48:57 (dated September 16, 2002); id. at 20:23:47 - 20:24:23 (dated September 17, 2002); id. at 20:25:37 - 20:25:53 (dated September 17, 2002); id. at 20:34:35 - 20:35:12 (dated September 17, 2002); id. at 14:37 (dated October 5, 2002); id. at 15:04 (dated October 5, 2002).  During these intercepted calls, Palma collected drug proceeds from Jose Nunez-Cabrera on behalf of Palma-Amaya and also delivered cocaine to Nunez-Cabrera.  See id.; PSR ¶¶ 9-14, at 9.

Palma's criminal behavior did not end with the conclusion of the wire interception in October 2002.  On February 5, 2003, Palma was again engaging in criminal behavior by attempting to pick up a large quantity of drug proceeds from a Federal Express office in Albuquerque, New Mexico.  See PSR ¶ 86, at 28.  On that day, Palma presented herself at the Federal Express office and

attempted to pick up a box that contained in excess of $30,000.00 in drug proceeds, shipped from Miami, Florida, by Rufino Suarez, a co-defendant in CR03-769. See id. Although the money was intended for Palma-Amaya, Palma, in her role as courier for the drug organization, attempted to retrieve the drug money. See id.

Palma contends that she has an exceptionally submissive personality, especially susceptible to an older relative's manipulation. Palma contends that she received no financial gain from her involvement with Palma-Amaya's drug activities. She represents that she was delivering packages as a favor to him out of a sense of indebtedness for his kindness towards her and out of a sense of duty.

## PROCEDURAL BACKGROUND

On August 13, 2003, the DEA arrested Defendant Carmen Palma for conspiracy to distribute more than 5 kilograms of cocaine in violation of 21 U.S.C. § 846.

Palma pled guilty on September 17, 2004, to one charge of Use of a Communication Facility in Committing a Drug Offense in violation of 21 U.S.C. § 843(b). On November 10, 2004, the United States Probation Office disclosed the PSR. Palma has accepted responsibility for her actions.

The PSR sets forth an Adjusted Offense Level of twenty-nine with an imprisonment range of 87 to 108 months. The maximum under 21 U.S.C. § 843(b), however, is forty-eight months. Forty-eight months is thus the sentence that would be applicable for a level twenty-two or twenty-three guideline range because Palma's Criminal History Category is I.

According to the PSR, Palma's children have alternative means of support should the Court incarcerate her. See PSR ¶¶ 109-10, at 32. Palma has one child, Julisa Ibuado, with her husband, Juan Ibuado. See id. ¶ 109, at 32. The PSR represents that Juan Ibuado, his mother, and Palma's

mother, Eloisa Palma, would care for Julisa Ibuado.  See id.  Palma also has a child, Jason Palma, from a previous relationship.  See id. ¶ 110, at 32.  Jason Palma currently resides in Mexico with Eloisa Palma for economic reasons.  See id.  Jason Palma would remain in the care of Eloisa Palma should the Court incarcerate Palma.

On January 5, 2005, Palma, through counsel, filed her motion for downward departure. Palma requests the Court depart downward ten levels from the PSR's Adjusted Offense of 22, which provides for forty-eight-month statutory maximum.  Palma asks for this downward departure in light of her cultural history; duress and coercion, as uniquely impacted by her vulnerability and by Palma-Amaya's parental influence; Palma's aberrant behavior in committing this offense; and her frailty. Palma also asks the Court to adjust her guideline level for her minor role in this offense.

Palma testified at her sentencing hearing.  See Transcript of Hearing at 6:19 - 24:15.  Palma is genuinely remorseful.  See id. at 13:9-16.  She does not appear to do much more than work to support her two children and take care of them.  See id. at 12:10-17.  She does not frequent bars, and does not do drugs or drink alcohol.  See PSR ¶ 114, at 33.

At the sentencing hearing, the Court also heard testimony from Felipe B. Gonzales, Ph.D, a professor of Sociology at the University of New Mexico.  Palma also submitted a report that the professor prepared.  See Report from Felipe B. Gonzales to Bill Parnall (dated November 19, 2004)(hereinafter, "Report").  The report discusses several factors that she contends are pertinent to her and which the Court should consider in determining whether a downward departure is appropriate, both under an individual analysis of each factor and under a "combination of factors" analysis.

Gonzales clarifies that he does not contend that Palma's cultural heritage negates her guilt.

See Report at 1.  Gonzales finds that "a rigid, traditional, child-rearing experience, together with the life circumstances in which she found herself at the time, made Carmen extraordinarily vulnerable to the entreaties of an older family member that put her at risk before the criminal justice system."  Id. Gonzales discusses the Mexican heritage in general, and how children are subservient and subject to strict discipline.  See id. at 1-2.  Daughters, he says, are held to higher standards of chastity and conformity.  See id. at 1.  He includes domestic abuse and corporal punishment as widely used to maintain this control.  See id. at 2.

Though Palma was born in the United States, Gonzales notes that she was taken at infancy to Sauces, Durango, Mexico, a small rural agrarian community so small that it does not have its own church or school.  See id. at 2.  He states that this community's environment retains the old agrarian-style customs and values.  See id. at 2.  Gonzales contends that Palma's mother fulfilled the dominant, patriarchal role because her father left to work in the United States for several months at a time.  See id. at 2.

## LAW ON DOWNWARD DEPARTURE

Under Booker v. United States and United States v. Fanfan, 543 U.S. __, 125 S.Ct. 738 (2005), the United States Sentencing Guidelines ("U.S.S.G.") are now advisory and no longer binding.  See id. at 757, 765-67, 769.  Nevertheless, the Sentencing Guidelines remain a factor that the sentencing court must consider in arriving at a reasonable sentence.  See id. at 767.  Thus, before considering the other factors in 18 U.S.C. § 3553(a), the sentencing court must first determine, as accurately as possible, what the Guideline sentence would be.  Only then can the sentencing court make an informed decision whether to deviate or vary from the Guideline sentence.

U.S.S.G § 5G1.1(a) provides: "Where the statutorily authorized maximum sentence is less

than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."   The commentary to § 5G1.1 sets forth the following example: "[I]f the applicable guideline range is 51-63 months and the maximum sentence authorized by statute for the offense of conviction is 48 months, the sentence required by the guidelines under subsection (a) is 48 months; a sentence of less than 48 months would be a guideline departure."   U.S.S.G. § 5G1.1 cmt. (2004).

Under the Sentencing Guidelines, a district court must ordinarily impose sentences within the range that the applicable guideline specifies.  See United States v. Rybicki, 96 F.3d 754, 757 (4th Cir. 1996).  "Each guideline attempts to anticipate a broad range of typical cases--a 'heartland'--that is representative of the circumstances and consequences of ordinary crimes of the type to which the guideline applies."  Id. (citing Koon v. United States, 518 U.S. 81, 93 (1996)).  "[D]istrict Courts may depart from the applicable guideline range" in only certain circumstances.  United States v. Jones, 158 F.3d 492, 497 (10th Cir. 1998)(quoting 18 U.S.C. § 3553(b)).

U.S.S.G. § 5K2.0 contains the court's authority to depart from the guidelines and states that a sentencing court may depart from the applicable guidelines if:

(1)     In General.--The sentencing court may depart from the applicable guideline range if--

(A)     in the case of offenses other than child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. 3553(b)(1), that there exists an aggravating or mitigating circumstance; or

(B)     in the case of child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. 3553(b)(2)(A)(i), that there exists an aggravating circumstance,

of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance

the objectives set forth in 18 U.S.C. 3553(a)(2), should result in a sentence
different from that described.

U.S.S.G. § 5K2.0(1)(A),(B).  To determine and assess, for purposes of determining a Guidelines'

sentence, whether the Sentencing Commission adequately took a circumstance into consideration,

Congress has limited the court's inquiry and instructed courts to "consider only the sentencing

guidelines, policy statements, and official commentary of the Sentencing Commission."  18 U.S.C.

3553(b)(1).  See United States v. Jones, 158 F.3d at 497.  The Guidelines Manual instructs courts

that the Commission did not adequately take into account cases that are, for one reason or another,

"unusual."  U.S.S.G. § 1A1.1, intro. cmt. 4(b).

> The Introduction to the Guidelines explains:
>
> The Commission intends the sentencing courts to treat each guideline as carving out
> a 'heartland,' a set of typical cases embodying the conduct that each guideline
> describes.  When a court finds an atypical case, one to which a particular guideline
> linguistically applies but where conduct significantly differs from the norm, the court
> may consider whether a departure is warranted.

Id.  The Commission lists certain factors that never can be bases for departure: (i) race, sex, national

origin, creed, religion, socio-economic status, see U.S.S.G. § 5H1.10; (ii) lack of guidance as a youth,

see id. § 5H1.12; (iii) drug or alcohol dependence, see id.  § 5H1.4; and (iv) economic hardship, see

id. § 5K2.12.  The Commission then states, however, that, with the exception of those listed factors,

it "does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the

guidelines) that could constitute grounds for departure in an unusual case."  U.S.S.G. § 1A1.1, intro.

cmt. 4(b).

In Koon v. United States, the Supreme Court of the United States clarified federal district

judges' sentencing role and the extent of their authority to depart under Guidelines.  See 518 U.S.

-7-

at 113.  The Supreme Court recognized that the Guidelines' goal is "to reduce unjustified disparities and to reach towards the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice."  Id.  The Supreme Court explained that "the Guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system."  Id.  It interpreted congressional intent as follows:

> This, too, must be remembered, however.  It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.  We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Id.

A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline."  Id. at 98.  The Supreme Court in Koon v. United States alluded to the fact that then-Chief Judge of the United States Court of Appeals for the First Circuit and now Associate Justice, Stephen G. Breyer, in response to the Commission's treatment of departure factors, explained that a sentencing court considering a departure should ask the following questions:

> 1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?
>
> 2) Has the Commission forbidden departures based on those features?
>
> 3) If not, has the Commission encouraged departures based on those features?
>
> 4) If not, has the Commission discouraged departures based on those features?

Id. at 95 (quoting United States v. Rivera, 994 F.2d 942, 949 (1st Cir. 1993))(quotation omitted).  In addressing these questions and further explaining the analysis that a district court should undertake in determining whether a departure from the Guidelines is appropriate, the Supreme Court explained

that the Commission prohibits consideration of a few factors, and it provides guidance as to the factors that are likely to make a case atypical by delineating certain of them as "encouraged" bases for departure and others as "discouraged" bases for departure.  See Koon v. United States, 518 U.S. at 96.

Courts may depart on the basis of an encouraged factor if the applicable Guideline does not already take the factor into account.  See id.  A court may depart on the basis of a discouraged factor, or an encouraged factor already taken into account, "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present."  Id.  If the Guidelines do not mention a factor, the court must, after considering the structure and theory of relevant individual Guidelines and the Guidelines as a whole, decide whether the factor is sufficiently unusual to take the case out of the Guideline's heartland, bearing in mind the Commission's expectation that departures based on factors not mentioned in the Guidelines will be "highly infrequent."  Id. (quotation omitted).  The Supreme Court further explained:

> To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing.  Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guidelines cases.  District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do.

Id.  at 98.

In deciding whether to depart from the applicable guideline sentencing range, the court must employ the four-prong analysis that the United States Court of Appeals for the Tenth Circuit enumerated in United States v. Collins, 122 F.3d 1297 (10th Cir. 1997), which, as the Tenth Circuit

stated in United States v. Jones, 332 F.3d 1294 (10th Cir. 2003), Congress has superseded by statute:

> (1) whether the factual circumstances supporting a departure are permissible departure factors; (2) whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland thus warranting a departure, (3) whether the record sufficiently supports the factual basis underlying the departure, and (4) whether the degree of departure is reasonable.

United States v. Collins, 122 F.3d at 1303.  If

> [a] factor [is] classified as 'forbidden,' *see, e.g.*, U.S.S.G. § 5H1.10 (race, sex, national origin, creed, religion, socio-economic status); U.S.S.G. § 5H1.12 (lack of guidance during youth); U.S.S.G. § 5H1.4 (drug or alcohol dependence); U.S.S.G. § 5K2.12 (economic hardship), [it] can never provide a basis for departure and its consideration ends at this step.

United States v. Rybicki, 96 F.3d at 759 (holding that defendant's responsibilities to son and wife, both of whom have medical problems, are discouraged as a basis for downward departure).  If the Guidelines classify the factors as encouraged or discouraged, or if the Guidelines do not mention the factor, the court must engage in further analysis.  See id. at 758.  Upon analysis, only if the district court determines that the circumstances and consequences of a case are atypical or unusual, and, therefore, the case does not fall within the guideline's heartland, may it exercise discretion to depart from the specified sentencing range.  See id.

The Tenth Circuit articulated the Koon analysis that "[i]mpermissible factors include forbidden factors, discouraged factors that are not present to some exceptional degree, and encouraged factors already taken into account by the applicable guideline that are not present to some exceptional degree." United States v. Collins, 122 F.3d at 1303.  In United States v. Collins, the sentencing court provided three grounds for its downward departure, two of which -- the defendant's age and infirmity -- were discouraged factors.  See id. at 1305.  The Tenth Circuit's analysis indicated that a discouraged factor, when aggregated with other factors as grounds for departure, need not arise to

the same level of atypicality as would be required were the factor the departure's sole basis.  See United States v. Jones, 158 F.3d at 501 (recognizing that, although the defendant's support in the community was insufficiently "extraordinary" to support a departure on this basis alone, a district court did not abuse its discretion by relying on this factor as one of several grounds supporting a departure); United States v. Pena, 930 F.2d 1486, 1494-95 (10th Cir. 1991)(holding that extraordinary family responsibilities, combined with aberrational nature of conduct, warranted departure).

1.    **Aberrant Behavior.**

In United States v. Jones, the Tenth Circuit reviewed a district court's downward departure on the bases of eleven factors, including collateral employment consequences, aberrant nature of the offense conduct, community service, support in the community, voluntary disclosure of offense conduct, post-offense rehabilitation, and access to rehabilitative counseling at defendant's place of employment.  See 158 F.3d at 496 n.4.  In upholding the district court's decision to depart downwards, the Tenth Circuit gave great deference to the factual findings of the district court, saying:

> In reviewing the district court's characterization of Mr. Jones' offense conduct as aberrant behavior under the abuse of discretion standard we must determine how much deference is due.  The Supreme Court has indicated deference is owed to the "judicial actor better positioned than another to decide the issue in question." Koon [v. United States], 518 U.S. at 99 . . . (quotation marks, omission, and citations omitted).  The Supreme Court has further indicated the district court has a "special competence" in making the fact-specific assessments necessary to determine whether a particular case is sufficiently unusual to warrant departure.  Id.  In such instances, deferential appellate review facilitates the district court's resolution of questions involving "multifarious, fleeting, special, narrow facts that utterly resist generalization." Id. (quotation marks and citation omitted).
>
> We are convinced the determination of whether an individual defendant's offense conduct is aberrational, like the decision to depart, requires consideration of unique factors not readily susceptible of useful generalization.  The district court is in the

-11-

better position to determine whether the defendant's offense conduct is out of character for that individual. Accordingly, the district court's resolution of this largely factual question is due substantial deference. After reviewing the record here, we conclude the district court did not abuse its discretion when it found Mr. Jones' offense conduct to be aberrational in light of his personal history.

\* \* \* \*

In view of the district court's special competence in making the refined comparative factual assessments necessary to determine if a circumstance is unusual or a characteristic is present to an exceptional degree, see Koon [v. United States], 518 U.S. at 98-99 . . . , we are not inclined to substitute our judgment for that of the sentencing court. The district court did not abuse its discretion when it found the circumstances of this case atypical. The permissible departure factors available to the district court, in the aggregate, provided a proper basis for departure, and are supported adequately in the record.

United States v. Jones, 158 F.3d at 500, 505.

In United States v. Tsosie, 14 F.3d 1438 (10th Cir. 1994), overruled in part by United States v. Benally, 215 F.3d 1068, 1074 (10th Cir. 2000), the Tenth Circuit discussed aberrant behavior as a ground for departure in a homicide case in which the district court departed downward to a level nine, relying partly on evidence of aberrational behavior and citing United States v. Pena. See United States v. Tsosie, 14 F.3d at 1441-42. The Tenth Circuit remanded the case to the district court because the court had not adequately set out a factual basis for departure, explaining that the Tenth Circuit would not "rationalize" the district court's ruling and that, along with the great discretion the district court has in sentencing, it also has the responsibility to support its departure by facts in the record:

We will not rationalize a district court's departure from the Guidelines--either the decision to depart or the degree of departure. [United States v.] Jackson, 921 F.2d [985,] 990 [(10th Cir. 1990)]. "It is not our task to determine what a district court's explanation for a departure could be." Id. at 993. Once the court assumes the burden of the step of departure it must also bear the corresponding burden of ensuring the record contains sufficient information to determine how and why the sentencing court

-12-

reached the degree of departure imposed.  U[nited] S[tates] v. St. Julian, 922 F.2d 563 (10th Cir.1990)(Julian I).

United States v. Tsosie, 14 F.3d at 1441, 1443 (footnote omitted).  In United States v. Benally, the Tenth Circuit receded from its holdings in United States v. Tsosie and United States v. Pena to the extent  that, in those cases, the Tenth Circuit "upheld downward departures for aberrant conduct based, in part, on the fact the defendant had not been engaged in any prior criminal activity." United States v. Benally, 1068 F.3d at 1074.  The Tenth Circuit then held

> that the factors supporting an aberrant behavior departure must involve something other than an act which is merely a first offense.  Stated differently, the permissible factors in this context must illustrate some unique circumstance--some element of abnormal or exceptional behavior--beside the fact the defendant has never before committed the crime.

Id.  Moreover, the Guidelines indicate that, even in the most difficult and justifiably sympathy-evoking area, courts should depart downward only in rare cases.  See United States v. Archuleta, 128 F.3d 1446, 1450 (10th Cir. 1997).

Pursuant to U.S.S.G. § 5K2.20, "a downward departure for aberrant behavior may be warranted in an exceptional case if (1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited under subsection (c)."  U.S.S.G. § 5K2.20(a). Subsection (b) indicates: "The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  Id. at § 5K2.20(b).  Departures for aberrant behavior are justified only in "extraordinary" cases.  See United States v. McClatchey, 316 F.3d 1122, 1133 (10th Cir. 2003).

-13-

"The comment to the Guideline defines aberrant behavior as 'a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life.'" Id. (quoting U.S.S.G. § 5K2.20, cmt. n.1).  "[B]ehavior is aberrant only if it represents 'a short-lived, marked departure from an otherwise law-abiding life.'" Id. at 1135 (quoting United States v. Alvarez-Pineda, 258 F.3d 1230, 1240 (10th Cir. 2001)(emphasis added)).

### 2.     Family Ties and Responsibilities.

"Under U.S.S.G. § 5H1.6, . . . '[f]amily ties and responsibilities . . . are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.'  Family ties and responsibilities are specific offender characteristics, ordinarily a discouraged basis for departure." United States v. Jones, 158 F.3d at 499 (quoting U.S.S.G. § 5H1.6).  Although U.S.S.G. § 5K2.0 allows for departure based on this factor, it is only appropriate in atypical cases. See id.  "When used as the sole basis for departure, family circumstances must be 'extraordinary.'" Id. (quoting United States v. Rodriguez-Velarde, 127 F.3d 966, 968-69 (10th Cir. 1997)).  "To warrant departure on this basis, 'a defendant must demonstrate that the period of incarceration set by the Guidelines would have an effect on the family or family members beyond the disruption to family and parental relationships that would be present in the usual case.'" Id. (quoting United States v. Rodriguez-Velarde, 127 F.3d at 968)(quotation omitted).

### 3.     Duress/Coercion and Parental Influence.

"While a parent's unique position vis-a-vis his or her child may result in an ability to wield significant influence over that child, we believe such influence is most appropriately analyzed under the 'Coercion and Duress' factor recognized in § 5K2.12." United States v. Contreras, 180 F.3d

-14-

1204, 1211 (10th Cir. 1999)(pre-2003 amendment to § 5K2.12). Section 5K2.12 reads:

Coercion and Duress (Policy Statement)

If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

U.S.S.G. § 5K2.12 (2004).[2] The Tenth Circuit has concluded that coercion in the absence of evidence of such enumerated serious threats is a discouraged basis for departure. See United States v. Contreras, 180 F.3d at 1211.

In United States v. Contreras, the Tenth Circuit dealt with issues similar to those in this case. In United States v. Contreras, "Dolores Contreras [was] one of twenty-two people charged by the government with participating in an extensive drug conspiracy run by her father, Gabriel Rodriguez-Aguirre. Mr. Rodriguez-Aguirre's family-run organization accounted for the sale of over 20,000 pounds of marijuana and 20,000 pounds of cocaine throughout the United States between 1984 and 1992." 180 F.3d at 1207. Following an earlier mistrial, a jury ultimately found Contreras guilty and convicted her of "conspiracy, investment of illicit drug profits, and two counts of money laundering." Id. The defendant's involvement over a six-year period from December 1986 until

---

[2] The Tenth Circuit decided the United States v. Contreras decision before the amendments to § 5K2.12 in 2003 and in 2004, which, in part, added the language: "Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure."

October 1992 "consisted primarily of storing large amounts of drugs at her Phoenix, Arizona home and using profits from drug sales." Id. at 1207.

The district court in United States v. Contreras, acting through the Honorable John E. Conway, then-Chief United States District Judge, now Senior United States District Judge, departed downward "to avoid [an] unwarranted disparity of sentences . . . ." Id. The Tenth Circuit, in an earlier opinion, reversed, concluding that the other defendant to whom Judge Conway compared Contreras was not similarly situated. Id. See United States v. Contreras,108 F.3d 1255, 1272 (10th Cir. 1997). On remand, Judge Conway departed downward on the basis of disparity of sentences and parental influence. See United States v. Contreras 180 F.3d at 1208. The majority opinion reversed the departure, finding that her father's influence did not amount to duress or coercion as U.S.S.G. § 5K2.12 contemplates. See id. at 1211. The Tenth Circuit's majority opinion first classified the factor of parental influence as "Coercion and Duress," a factor that § 5K2.12 recognizes. See id. In reviewing Judge Conway's decision to depart based on parental influence, the Tenth Circuit noted that, "[t]o the extent that the district court relied on any coercion stemming from her financial dependance on her father--or economic coercion--the court relied on an impermissible factor." Id. at 1211. With respect to "emotional" coercion, the court articulated the policy statement in 5K2.12, explaining that "'[o]rdinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.'" See United States v. Contreras 180 F.3d at 1211 (quoting U.S.S.G. § 5K2.12 (policy statement)(alteration in the original)). The Tenth Circuit explained that, "[b]ased on the Commission's affirmative statement of when a departure would 'ordinarily' be warranted, this court has concluded that coercion in the

-16-

absence of evidence of such enumerated serious threats is a discouraged basis for departure." Id. at 1211-12 (citing United States v. Gallegos, 129 F.3d 1140, 1145 (10th Cir. 1997)).  Thus, in the absence of these serious enumerated threats, the coercion's circumstances must be beyond the ordinary, so as to render the case atypical and take it out of the heartland.

The Tenth Circuit then looked at the factors that Judge Conway set forth and upon which he "conclud[ed] that Contreras' situation falls outside the ordinary, run-of-the-mill cases that the heartland encompasses." Id. at 1212.  These factors included: economic need -- she was raising young children "that needed feeding," an impermissible basis for departure; coercion absent serious threats, a discouraged basis for departure; and relative youth, a discouraged basis for departure because she was seventeen at the time she began participating in the scheme. Id. 1211-13 (quotation omitted).  On the "age factor," the Tenth Circuit found it significant that she remained in the illicit scheme until she was twenty-four and intimated that, although she may have been subject to parental coercion when she began working for her father, at some point during her involvement with the drug conspiracy, coercion subsided. Id. at 1212.

Looking at all aspects of coercion, as Judge Conway had articulated them, the Tenth Circuit concluded that it saw "no evidence that [the] case involved an exceptional degree of coercion." Id. at 1213.  The Tenth Circuit thus determined that, under that case's facts, the circumstances of coercion were insufficiently unusual to take it beyond the heartland of similar Guideline cases. See id.  The Tenth Circuit also rejected the argument that departure was warranted based on the combination of factors, explaining: "Combining the legally impermissible and factually inappropriate grounds for departure cannot make this case one of the 'extremely rare' cases contemplated by § 5K2.0." United States v. Contreras, 180 F.3d at 1213.

The dissenting opinion of the Honorable Monroe G. McKay, United States Circuit Judge, set out another analysis of the parental influence issue.  In his dissent, Judge McKay explained that "the concept of parental influence does not fall within the rubric of coercion and duress but is a distinct type of influence that was not considered by the Guidelines."  Id. at 1214 (McKay, J., dissenting). Judge McKay explained that "filial piety has been recognized as underlying a permissible basis for a downward departure."  Id. at 1215 (citing United States v. Monaco, 23 F.3d 793, 800 (3d Cir. 1994), and explaining that United States v. Monaco "determin[ed] that defendant-father's anguish over bringing child into criminal activity was proper basis for downward departure, especially where adult child had 'dutifully and unquestioningly honor[ed] his father's request'").

Judge McKay noted that "no Guideline provision expressly prohibits or discourages the consideration of parental influence in downward departure decisions."  Id. at 1216.  Judge McKay then cited Tenth Circuit cases that have upheld departures for parental influences finding that the Guidelines do not prohibit that action.  For example, in United States v. Forsythe, No. 97-6250, 1998 WL 539462 (10th Cir. Aug. 24, 1998)(unpublished decision), the Tenth Circuit held:

> Whether parental influence is adequately taken into account under the Guidelines is a legal question, and, as a result, we need not defer to the district court's determination.  See [United States v.] Collins, 122 F.3d [1297,] 1303 [(10th Cir. 1997)].  Nevertheless, upon considering the Guidelines and accompanying commentary, we agree with the district court that the use of parental influence in furtherance of a criminal enterprise may serve as a basis for upward departure.

United States v. Forsythe, 1998 WL 539462, at *3.  See also United States v. Jagim, 978 F.2d 1032, 1042 (8th Cir. 1992); United States v. Shurman, 902 F.2d 873, 876 (11th Cir. 1990).  Judge McKay finally concluded that

> parental influence constitutes a mitigating circumstance under 18 U.S.C. § 3553 which, under the right facts, could sustain a downward departure.  One kind of

mitigating circumstance that would justify a downward departure is one which "somehow reduces a defendant's guilt or culpability. It is a circumstance that 'in fairness and mercy[] may be considered as extenuating or reducing the degree of moral culpability.'" United States v. Newby, 11 F.3d 1143, 1148 (3d Cir.1993) (citation omitted), limited as dicta by [United States v.] Monaco, 23 F.3d [793,] 802-03 [(3d Cir.1994)](listing other circumstances which are relevant to and have justified downward departures even though not indicative of reduced guilt or culpability). I am of the view that parental influence is exactly the type of mitigating circumstance which may reduce a defendant's guilt because it speaks directly to her personal responsibility in entering the criminal enterprise.

United States v. Contreras, 180 F.3d at 1216.

In United States v. Delgado, 994 F. Supp. 143 (E.D.N.Y. 1998), the district court granted a downward departure determining that the defendant's mental state and history amounted to duress and aberrant behavior. See id. at 146. In that case, the defendant's father had frequently beaten the defendant with a belt and a stick. See id. at 144. The defendant had raised two children alone and kept them in school. See id. The court ruled that placing that defendant, with minimal mens rea, in prison for the long period that the Guidelines suggested would not serve society well. See id. The court felt that she was impressionable and that it was unlikely she would commit a crime again. See id.

### 4.    **Cultural Heritage.**

United States v. Contreras, in a footnote, also addressed an argument that Contreras raised in her *pro se* appellate brief which asked the Tenth Circuit "to consider her unusually high susceptibility to her father's influence due to her culture and religion." 180 F.3d at 1212 n.4. The Tenth Circuit then quoted Contreras as explaining "that parental subservience is . . . fundamental to traditional Hispanic/Mexican-American culture." Id. The Tenth Circuit responded: "While we do not doubt the sincerity of Ms. Contreras' argument, the Sentencing Guidelines prohibit us from

-19-

considering race, national origin, creed, and religion." Id. (citing U.S.S.G. § 5H1.10).

The Honorable Richard A. Posner, United States Circuit Judge for the Seventh Circuit, in

United States v. Guzman, 236 F.3d 830 (7th Cir. 2001), rejected a similar argument when he held that

the district court abused its discretion in departing downward based on the defendant being a female

Mexican. Id. at 833. In so holding, the Seventh Circuit explained:

> What the district judge regarded as a matter of cultural heritage is just the joinder of
> gender and national origin, two expressly forbidden considerations in sentencing.
> Because the defendant is a Mexican woman, she may have been more likely to
> participate in her boyfriend's criminal activity than if she had been an Anglo male. To
> use that as a basis for a departure would wreak havoc with section 5H1.10. The
> Sentencing Commission could not have wanted sentencing courts to pile on the
> stereotypes by combining forbidden categories, so that while forbidden to consider
> sex or race or religion the judge could for example give a break to the defendant
> because she was a black woman of the Muslim faith.

Id.[3]

### 5.    Other Factors.

Pursuant to U.S.S.G. §§ 5H1.1, 5H1.3, and 5H1.4, factors such as age, mental condition, and

physical condition are discouraged factors in determining whether a departure is warranted.

Departures based on these factors are not proper absent extraordinary circumstances that take the

case out of the heartland of cases. See United States v. Caldwell, 219 F.3d 1186, 1192-93 (10th Cir.

2000); United States v. Shoupe, 929 F.2d 116, 120 (3d Cir. 1991).

### ANALYSIS

Palma advances a number of grounds for a downward departure under the Guidelines. Palma

---

[3] The Seventh Circuit, however, also noted that although it "lean[s] to the view that section
5H1.10 of the guidelines does forbid consideration of ethnicity or 'cultural heritage' in the sentencing
decision, we need not so hold today and by doing so exclude all possibility of consideration of cultural
factors in cases that we cannot yet foresee." United States v. Guzman, 236 F.3d at 833.

has not, however, offered sufficient factual support for a departure.  Accordingly, the Court will deny her motion for a downward departure.

## I.     THE COURT HAS THE AUTHORITY TO DEPART FROM THE ADJUSTED OFFENSE LEVEL.

The commentary permits a downward departure from forty-eight months, which is the statutory maximum sentence in this case.  Otherwise, the last clause in the commentary's example would be meaningless.  If the commission had intended that courts could not grant downward departures, it would have omitted this clarifying statement or it would have expressly stated that district courts cannot grant downward departures.

In applying Koon v. United States, the Tenth Circuit has recognized a federal district court's authority to depart downwards in cases involving some of the factors upon which Palma urges this Court to depart.  Cases from the Tenth Circuit and from district courts in other circuits that have wrestled with these issues indicate that the asserted factors in this case give the Court the authority to depart downward.  The Court has the authority to depart as long as it fulfills its responsibility to support its departure by making the necessary findings that demonstrate the case's unusual nature and remove it beyond the heartland.  It is thus appropriate for the Court to look at the case's facts and circumstances and to determine whether to depart.

## II.    THE CIRCUMSTANCES IN THIS CASE DO NOT JUSTIFY A DOWNWARD DEPARTURE.

Palma asks the Court to depart downward from the PSR's forty-eight month Adjusted Offense Level to a level that would authorize a term of probation.  Palma contends that her case is atypical and therefore falls beyond the heartland of cases that the Sentencing Commission took into consideration in promulgating the Guidelines.  Palma contends that several factors justify a downward

departure of her offense level.

Palma contends that her case is atypical, because of her extreme vulnerability, which was allegedly caused by the circumstances under which she was raised, including her cultural and personal heritage, and Palma-Amaya's parental influence, exacerbated by a history of severe punishment if she failed to comply with adult family members' wishes.   Palma contends that an example of circumstances similar to her circumstances are those in United States v. Delgado, where the district court granted a departure to a young woman who was a drug courier.   See 994 F. Supp. at 146. While the Court, however, has the authority to depart under at least some of the asserted factors, the facts in this case do not support a downward departure and certainly not to a level permitting the imposition of probation in lieu of incarceration.

### A.   PALMA IS NOT ENTITLED TO A DOWNWARD DEPARTURE BASED ON FAMILY HARDSHIP, OR MENTAL AND EMOTIONAL CONDITIONS.

Palma's alleged mental and emotional conditions, physical condition, family ties, hardship and responsibilities, are discouraged factors and not atypical or unusual.   See U.S.S.G. § 5H1.6.   Palma's family relationships and the hardships possibly caused by her period of incarceration do not rise to the level of extraordinary.   Although Palma's family circumstances are lamentable, her case does not present the rare case that the Guidelines contemplate as meritorious of a downward departure.   See United States v. Gallegos, 129 F.3d 1140, 1146 (10th Cir. 1997)(concluding that fact that defendant was sole support for family did not take circumstances out of the heartland); United States v. Webb, 49 F.3d 636, 638-39 (10th Cir. 1995)(holding that defendant's role as sole caretaker did not render circumstances extraordinary); United States v. Allen, 87 F.3d 1224, 1225 (11th Cir. 1996)(disallowing downward departure even though defendant was the primary caretaker of 70-year

old father who had Alzheimer's and Parkinson's diseases as it was not an extraordinary case).

Palma has already been given considerable consideration for her situation.  Palma is benefitting by avoiding a more severe sentence under 21 U.S.C. § 846.  With the reduction reflected by the plea to a charge under 21 U.S.C. § 843(b), Palma's sentence exposure has been substantially decreased. Essentially, her sentence has been reduced by more than fifty percent.

Palma must be held accountable for her criminal activity.   An additional reduction is not justified.  Instead, a reduction would be contrary to the Guidelines' mandates of sentencing and of punishment.

**B.     PALMA IS NOT ENTITLED TO A DOWNWARD DEPARTURE BASED ON ABERRANT BEHAVIOR.**

Palma contends that she is entitled to downward departure because of aberrant behavior, as this offense was an isolated act of criminal activity very inconsistent with her character as a law-abiding citizen.  Palma's criminal behavior, however, did not involve one isolated incident contrary to her otherwise law-abiding lifestyle.

The Court cannot fairly characterize Palma's criminal activity as one isolated incident of criminal behavior.  Palma's criminal endeavors spanned months.  She was not a mindless participant in the crimes, acting without any thought or planning.  Palma's actions demonstrate at least some degree of planning.

Palma relies on United States v. Pena and United States v. Tsosie to justify a departure based on aberrant behavior.  These two cases, however, are pre-Koon and pre-Benally.  The proper analysis here is whether Palma's behavior is extraordinary, thus taking her case out of the heartland of cases. See United States v. McClatchey, 316 F.3d at 1133.  This case does not contain sufficient facts to

support a departure for aberrant behavior, and thus a downward departure based on aberrant behavior is not warranted.

### C.    PALMA IS NOT ENTITLED TO DOWNWARD DEPARTURE BASED ON PARENTAL COERCION/DURESS.

Palma argues that, even under the majority opinion in Contreras, and after analyzing the issue of parental influence under coercion or duress pursuant to U.S.S.G. § 5K2.12, the Court has the authority to depart if it finds that the circumstances of coercion -- absent the serious threats and circumstances enumerated in U.S.S.G.'s policy statement -- are sufficiently unusual. Palma contends that she has an unusually introverted, submissive, subservient, and unquestioning character. She argues that this character, coupled with her sense of tremendous indebtedness to Palma-Amaya for his emotional support during a particularly vulnerable time in her life, is what made Palma-Amaya's demands coercive. See United States v. Smith, 987 F.2d 888, 891 (2d Cir. 1993)(finding that "[t]he court is not confined to the classical definition of duress, but should properly consider the individual before the court and her particular vulnerability"); United States v. Delgado, 994 F. Supp. at 145; United States v. Mena, 968 F. Supp. 115, 117 (E.D.N.Y. 1997)(finding coercion where the defendant's low IQ and gullible personality "made resistance [to conspiracy] nearly impossible"); United States v. Gaviria, 804 F. Supp. 476, 480 (E.D.N.Y. 1992)(finding that battered woman may present a subservience problem similar to duress).

Palma asks the Court to look into her heart and to determine whether the factors weigh in her favor and support a sentence of probation. While Palma now contends that she had no interest in promoting a drug ring, the Court finds it difficult to conclude that she did not know what she was doing was promoting the drug activities of Palma-Amaya and of others. It is true that parental

-24-

influence is not an impermissible ground for departure.  The Court is not convinced, however, that the alleged circumstances of coercion are so unique and unusual, either alone or in aggregation with other factors, that they render this case atypical and therefore remove it from the heartland.

Palma argues that she is a timid, meek, shy, and subservient young woman who was susceptible to Palma-Amaya's influence.  Palma contends that ruthless Palma-Amaya wielded such duress on her timid personality that he coerced her into committing criminal acts.  She contends that her criminal acts were therefore the result of coercion and duress.

This case, however, is like the <u>Contreras</u> case.  Palma tries to distinguish this case from her case by arguing that she has an exceptionally submissive personality and that she received no financial gain whatsoever from her involvement with Palma-Amaya's drug activities.  But that Palma received no direct financial benefit is not a compelling reason to see her conduct as coerced rather than as resulting from independent thinking and conscious wrongdoing.

Even if the Court views Palma's alleged coercion and duress from the perspective of her character, which allegedly made her especially vulnerable to coercion, the Court cannot say that she is visibly the victim personality of which others often take advantage.  The Court did not get any other impression when she was questioned at her sentencing.  Palma did not have a flat affect, which is sometimes typical of abused persons.

Palma urges the Court to use Judge McKay's analysis of the parental influence issue in his dissenting opinion in <u>United States v. Contreras</u> to guide it in its analysis of Palma's culpability. Palma contends that, because this case involves a convergence of coercive forces not typically associated with classical coercion/duress of the criminal law, forces which are intrinsically interwoven with Palma's unique vulnerability, the Court should consider a downward departure under Judge

McKay's rationale. Palma maintains that the Court may make a determination as to the extent of a departure based on her desire to comply with Palma-Amaya's wishes and his parental influence on her.

It may be correct, as Judge McKay explained in United States v. Contreras, that duress and coercion do not address the true issues applicable in a parental influence case. The problem here is that the Court finds that the facts do not support a departure on that ground or other grounds that are not specifically impermissible. The Court is concerned that, if the Guidelines were still mandatory, the Tenth Circuit would not uphold the Court's departure.

Palma's assertion that her timid nature, young age, small physical stature, and mental disposition made her a victim of coercion by her more powerful uncle stands in contravention to Tenth Circuit law prohibiting reliance on discouraged factors to find coercion. See United States v. Contreras, 180 F.3d at 1212. Palma is inviting the Court to do what the Tenth Circuit has said is improper. The Court should not find coercion existed simply based on her diminutive size as compared to her uncle, or on her weak emotional state. See id.

A departure based on coercion or duress is not proper in this case. There is no evidence of fear of physical harm from Palma-Amaya if she did not engage in his drug trafficking activities. Palma's intercepted telephone conversations undercut her argument. The Court is concerned that the fear she now alleges is not only based on discouraged factors, but may be contrived at a late date to avoid the sentence that she faces.[4]

---

[4] The Court has kept in mind that Palma's parents were not present and that Palma-Amaya had assumed a parental role. The Court has assumed that he exerted the same level of influence as a mother or a father.

Moreover, Palma argues that the coercion she experienced was heightened because of her cultural background, which taught her to be obedient and subservient to older family members.  By asserting a departure based on cultural background is warranted, Palma is coming close to relying on national origin as a basis for departure.  See United States v. Contreras, 180 F.3d at 1212 n.4; United States v. Guzman, 236 F.3d at 833.  U.S.S.G. § 5H1.10 prohibits reliance on national origin as a basis for departure.  In any case, Palma's reliance on culture to justify her criminal behavior appears to be more of an excuse she now uses to avoid facing the consequences of her criminal acts than a good ground for downward departure.

### D.   PALMA IS NOT ENTITLED TO A DOWNWARD DEPARTURE BASED ON PHYSICAL FACTORS.

Palma also contends that her small physical frame, age, and timid nature justify a downward departure.  There is, however, nothing extraordinary about her age, timid nature, shy mental condition, and small stature that takes this case out of the heartland of cases.  Palma does not appear to be significantly different from other young women who are impressed with the lifestyle that money from drug trafficking makes possible.  If she succumbed to anything, it apparently was the allure of money to be made by running errands for Palma-Amaya.

None of the factors, alone or in combination, are sufficient to warrant a departure.  They do not take Palma's case out of the heartland of cases as the Tenth Circuit contemplated in United States v. Collins.[5]

**IT IS ORDERED** that the Defendant's Motion for a Downward Departure is denied.

---

[5] At the sentencing hearing, after the Court denied the motion for a downward departure, the Court further determined that because the sentencing range presented is otherwise reasonable and furthers the factors that Congress enumerated in 18 U.S.C. § 3553(a), the Court would not deviate from the Sentencing Guidelines range.  See Transcript of Hearing at 75:8 - 76:2.

-27-

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the
   District of New Mexico
Erlinda O. Johnson
  Assistant United States Attorney for the
   District of New Mexico
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

William E. Parnall
Albuquerque, New Mexico

      *Attorney for the Defendant*